**REESE v CHAPMAN**

Ohio Appeals, 2nd Dist, Darke Co

No 505. Decided Sept 10, 1936

Billingsley & Mannix, Greenville, for appellant.

Murphy & Staley, Greenville, for appellee.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined on appeal on question of law from the judgment of the Court of Common Pleas of Darke County, Ohio.

The First National Bank of Pitsburg, Pitsburg, Ohio, was a national bank authorized to do business as such in Pitsburg, Darke County, Ohio. Honorable George W. Mannix during his lifetime was a stockholder in said bank, owning thirteen shares of the par value of $100.00 each, or a total of $1300.00. Prior to April, 1933, the plaintiff, Albert D. Reese, was appointed receiver of said bank for the purpose of liquidation. On April 12, 1933, the acting Comptroller of the Currency of the United States, after an accounting by the reeciver and the valuation of the uncollected as-

sets, found it was necessary to enforce the individual liability of stockholders, as prescribed by §§5151 and 5234 of the Revised Statutes of the United States.

By virtue thereof an assessment and requisition upon the share holders of said First National Bank in the sum of 100% was ordered to be paid by such stockholders on or before the 19th day of May, 1933. On or about April 20, 1933, notice was sent out by registered mail to all stockholders of record, demanding payment of a 100% stock assessment, the same to be paid on or before May 19, 1933. The notice contained the further statement. that the receiver was authorized by the Comptroller of the Currency to grant an extension without interest to shareholders who paid 25% of the assessment on or before the above date and who gave a written obligation, satisfactorily guaranteed, to pay an additional 25% on or before June 19, 1933, 25% additional on or before July 19, 1933, and the remaining 25% on or before August 19, 1933. One copy of said notice was sent by registered mail on or about April 22, 1933, to the George W. Mannix estate, and according to the return receipt was delivered on April 22, 1933, said receipt being signed "George W. Mannix estate, Ina M. Lehman." According to the agreed statement of facts, notice was duly received by the executors, so that the question, if any, as to the capacity in which Ina M. Lehman was acting, becomes immaterial.

George W. Mannix died testate on the 17th day of March, 1930. On the 24th day of March, 1930, in accordance with the nomination in his will, John W. Mannix, Joseph Menke and Conrad Kipp were appointed executors of his estate and duly qualified. During the year 1931 Conrad Kipp, one of the executors, died, and thereafter the remaining two executors continued to function as such until July 13, 1933, at which time said executors proffered their resignation, which was accepted, on or about the 11th day of August, 1933, and on this latter date Marjorie Mannix Chapman was appointed administratrix de bonis non with the will annexed of said estate. Suit was instituted by the plaintiff against the defendant administratrix on August 9, 1934. The defendant filed answer on December 10, 1934. Plaintiff's reply to defendant's answer was filed January 29, 1935.

The case was tried upon the pleadings and an agreed statement of facts, jury being waived and the same submitted to the court.

The trial court's decision was in writing,

and thereby we have the advantage of His Honor's reasoning and conclusions.

Request was made for a separate finding of facts and law which was complied with and the same is incorporated in the bill of exceptions.

The trial court's decision and judgment are based on the finding that plaintiff's cause of action was barred under the statute of limitations in that suit was not brought within two months after accruing of action as is required under §10509-144 GC.

Counsel for appellant contend that the non-claim statutes of Ohio requiring presentation of claim and allowance or rejection are not applicable in suits brought against estates of deceased stockholders of national banks for collection of double liability of stockholders. In support of this claim counsel cite §5152 of the Revised Statutes of the United States, also the following Federal decisions:

Parker v Robinson, 71 Federal 256;

Zimmerman v Carpenter, 84 Federal 747;

Drain v Stough, 61 Federal, 2nd Series, 668;

Forest v Jack, 79 Law Edition, 376;

Luce v Thompson, 36 Federal, 2d Series, 183.

Counsel for appellee, contra the proposition, cite and comment on the following:

State ex Fulton v Bremer, 130 Oh St 227;

Mann v Cleisdorff, 16 Federal, 2d Edition, 997;

Campbell v Haverhill, 155 U. S. 610;

McDonald v Thompson, 184 U. S. 71.

This question is a very perplexing one and any conclusion arrived at will not be free from doubt.

Sec 5152 of the Revised Statutes of the United States reads as follows:

"Persons holding stock as executors, administrators, guardians or trustees, shall not be personally subject to any liabilities as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold stock in his own name."

The above cited case of Zimmerman v Carpenter, 84 Federal 747, is directly in point and therein the following pronouncement is set forth in the second syllabus:

"And the fact that the time for filing claims against the estate has expired is no bar to an action to fix such liability."

The decision was by Carland, District Judge, and arose in the Southern District of South Dakota. The substantive facts are identical with those in the instant case and involved a claim for stockholders' double liability on stock held in a national bank. Just as in the instant case, the bank failed after the death of the decedent. A receiver was appointed by the Comptroller of the Currency, and a 100% assessment was ordered collected against the stockholders. The time fixed for presentation of claims had expired before the failure of the bank. The receiver of the bank presented claim to the administrator for stockholders' double liability within thirty days after the order of assessment was made by the Comptroller of the Currency. The administrator rejected the claim seven days thereafter and thereupon suit was filed. The question of limitation of action was based wholly on the fact that the assessment stockholders' double liability claim was not presented until after the expiration of the time fixed by the court for the presentation of claims against the estate. This theory was urged, notwithstanding the fact that the liability did not accrue until after the expiration of such presentation date. The reasoning of the court in determining that the non-claim statutes of the State of South Dakota would not apply is predicated wholly upon the provisions of said §5152 U. S. Statutes, as will appear from the following language on page 751 of the opinion:

"Now, it was not necessary for congress to provide by law that the estates of decedents should be liable for the debts of deceased persons. That result would follow irrespective of §5152. But congress intended to, and did, provide that the estate of the testator or intestate, in the hands of an executor or administrator, should be liable in like manner, and to the same extent, as the testator or intestate would be if living, and competent to act, and hold the stock. By the language of the section last referred to, the death of the testator or intestate does not in any way affect the liability of the estate of the testator or intestate, except, if no liability on the stock arises until after the estate is fully distributed, then there would be no estate to be charged. On the 23rd day of November, 1896, when the Dakota National Bank failed, Frances C. Carpenter, as the executrix of the estate of Charles C. Carpenter, deceased, under the laws of the United States and of South Dakota, was a shareholder therein. To the extent of 100 per cent of the par value of the stock held by her, the estate of Charles C Carpenter in her hands on that day was liable; not as if Carpenter was dead, but in the same manner, and to the same extent, as if he was living; the clear object of the statute being to make the estate liable for a debt arising after the death of a testator or intestate, as well as those arising before. On the 23rd day of November, 1896, so much of the estate of Charles C. Carpenter, deceased, which was in the possession of defendant, as executrix of said Carpenter, on that day, stood not as the estate of a deceased person with reference to the liability of said stock, but in the place of Charles C. Carpenter himself, liable in like manner, and to the same extent as he (Carpenter) would have been if alive."

The case of Drain v Stough, 61 Federal, 2d Series, (Washington), 668, is very similar in its facts with the instant case and like conclusions are arrived at as in the case of Zimmerman v Carpenter, supra. Syllabi 3, 4 and 5 read as follows:

"3. **Executors and administrators.** Statute requiring presentation of 'claims against decedent' is inapplicable to claims against estate, or against funds in personal representative's hands, arising in course of administration.

"4. **Executors and administrators.** Where National Bank's insolvency occurred after stockholder's death, claim for assessment on stock held not 'claim against decedent' and need not be presented to executor under state statute.

"5. **Limitation of actions.** Stockholder's liability to national bank's receiver accrues, and limitation statute begins to run, only when assessment is made."

The other cases cited by counsel for appellant are only inferentially pertinent. The cases cited by appellee may be distinguished in the following particulars:

In State ex Fulton v Bremer, 130 Oh St, supra, a state bank was involved and consequently §5152, U. S. Revised Statutes, would not be applicable.

In the case of Mann v Cleisdorff, 16 Federal, 2d Edition, supra, a national bank had failed and the assessment by the Comptroller of the Currency had been made prior to decedent's death. In this case application was given to the state statute of limitations.

In the cases of Campbell v Haverhill, 155

U. S., supra, and McDonald v Thompson, 184 U. S., supra, the causes of action were not based on stockholders liability in national banks, consequently §5152 U. S. Statutes, would have no application.

Insofar as the decisions of the United States District Court hold that double liability assessment claims against stockholders of national banks arising before the estate is settled but after the expiration of the statutory period for presentation of claims, that the state non-claims statutes or statutes of limitations do not begin to run until the assessment has been made, we are willing to accept as controlling law.

At this point in the case we come to the parting of the ways, and we find ourselves at variance with the claims and contentions of counsel for the respective parties and also with the judgment of the trial court.

Because of this viewpoint, we have endeavored to make a very exhaustive research of the procedural steps required in the matter of claims against the estates of deceased persons.

The new Probate Code became effective January 1, 1932, a little more than one year and nine months subsequent to the appointment and qualification of the executors of George W. Mannix, deceased.

The new Code in many of its sections adopts in substantially the same form the old law and so many prior decisions of our courts are applicable.

At the time of the death of George W. Mannix and also on the date of the administration subsequently taken out, no claim was existing against the estate in favor of The First National Bank of Pitsburg or its receiver later appointed. At that time, so far as appears from the record, the bank was a going concern and no liability existed, either actual or contingent. A stockholder's liability in corporations in which the law provides for double liability is sometimes spoken of as contingent, but more properly is characterized as prospective. However designated or characterized, no liability exists so long as the corporation is solvent. After insolvency is found, then the obligation for double liability will attach.

In the instant case, according to the agreed statement of facts, the earliest date upon which the double liability ripened into an existing obligation was April 12, 1933, this being the date upon which the acting Comptroller of the Currency, under author-

ity of Federal statute, ordered an assessment and requisition upon the shareholders in the sum of 100% of the stock held. The notice sent out on or about April 22 to the estate of George W. Mannix, and received by said executors on said date, constituted a presentation of claim and fixed May 19, 1933, as the time of payment of the 100% assessment. The notice contained an alternative provision for partial payment extending to August 19, 1933, without interest. The rebate of interest was conditioned that payment be made according to terms.

Sec 10509-112 GC, a new section under the new Probate Code, effective January 1, 1932, relative to presentation of claim, reads as follows:

"Sec 10509-112 GC. Presentation of claims; allowance or rejection. Creditors shall present their claims, whether due or not due, to the executor or administrator within four months after the date of his appointment. Such executor or administrator shall allow or reject all claims, except contingent claims, within thirty days after their presentation. Any claim presented after the time herein provided shall not prevail as against bona fide creditors or as against the executors or administrators who have acted in good faith, or against a surviving spouse who has made election to take under the will or at law, and, except as to negotiable instruments maturing subsequent to the expiration of such time, any such late claim shall not prevail as against bona fide distributees."

The Supreme Court of Ohio in the case of Beach v Mizner, 131 Oh St 481 (Ohio Bar Report, July 20, 1936), has held that §10509-112 GC is a statute of limitation and creditors' claims are barred unless presented within the four months after date of appointment.

This court made a similar finding in the case of Burton v Bausman, Executor, Miami County, 18 Abs 558, the opinion being by Judge Kunkle. This statute being enacted some one year and nine months subsequent to the appointment of the executors, by reason of that fact alone, if none other, could not be complied with. Neither could the claim involved in the instant case have been presented within four months following the effective date of the law for the reason that the claim did not exist at that time. From the agreed statement of facts it appears that the claim was presented promptly following the as-

sessment and requisition and nothing more can properly be required. Counsel for appellee, on page 5 of their brief, recognize that under the peculiar facts in the instant case a demand was made seasonably.

None of the three executors nominated in the will and subsequently appointed, at any time gave any intimation to the receiver that the correctness of the claim as a binding obligation against the estate was questioned. In the agreed statement of facts it is stipulated that the receiver, Mr. Reese, on two occasions discussed with Mr. Billingsley, one of the attorneys for the executors of the estate, the matter of the assessment. The exact date of the conversation was not definitely ascertained, but it is agreed to be either on May 11, 19 or 26, 1933 and July 7, 1933. On both occasions Mr. Billingsley stated that the estate was in process of liquidation and the assessments would be taken care of in due course. It is also stipulated that Mr. Billingsley urged the receiver not to place the claim in judgment as nothing would be gained through litigation.

The agreed statement of facts discloses nothing further relative to the acceptance or rejection of the claim prior to the date of the appointment of Marjorie Mannix Chapman as administratrix de bonis non with the will annexed.

It was the conclusion of the trial court that the notice of assessment fixing a time for payment would constitute in law a rejection of the claim when the payment was not made within the time stipulated. We are unable to bring ourselves to this conclusion.

Sec 10509-113 GC relative to rejection of claims reads as follows:

"Sec 10509-113 GC. Rejection of a claim. A claim shall be deemed disputed or rejected, if an executor or administrator, on presentation of the vouchers thereon, refuses, on demand made to endorse thereon his allowance of it as a valid claim against the estate."

This section lends no aid to appellee for the reason that no demand was made to any of the three executors or their secretary or attorney to endorse an allowance as a valid claim. The receiver did nothing more than present the claim with a statement as to when payment was expected. The attorney for the executors recognized the claim and stated that it ▬▬▬ would be taken care of in due course. It is our judgment that this would constitute an allowance of the claim.

In the case of **Miller v Ewing, Administrator, 68 Oh St 176,** the rule is announced by the Supreme Court of Ohio that the rejection of a claim may be made by an attorney for the estate acting ostensibly and in fact for the administrator. We know of no reason why an attorney for an estate, acting in fact and ostensibly for the estate, may not allow a claim; and so long as such allowance remains unquestioned no right of action would inure to the claimant. We have so held in **Buchner, Admr. v Knipper, 18 Abs 556.**

It is expressly provided in §10509-133 GC of the new code that:

"If a claim against the estate of a deceased person has been presented to the executor or administrator, and has been disputed or rejected by him, but not referred to referees, the claimant, except as otherwise provided by law, must commence a suit for the recovery of such claim within two months after such dispute or rejection, for the debt or any part of it then due, or within two months after some part of it becomes due, or be forever barred from maintaining an action thereon. Except as otherwise provided by law, no action shall be maintained thereon after such period by a person deriving title thereto from such claimant."

Under this non-claim statute it certainly can not be questioned that the two months statute of limitations does not ▬▬▬ start to run until after the claim is rejected. It was within the province of the executors to start running the two months' limitation had they rejected the claim within the thirty days required under §10509-112 GC. The pertinent provisions of this section read as follows:

"Such executor or administrator shall allow or reject the claims, except contingent claims within thirty days after their presentation."

The executors by inaction can not start the running of the two months' limitation. The claimant may, if he sees ▬▬▬ fit, invoke the provisions of ▬▬▬ §10509-113 GC and demand that an allowance as a valid claim be endorsed and, upon refusal, the statute proclaims that such refusal is a rejection of the claim.

A formal endorsement or allowance by the administrator is not indispensable. **Smock v Bouse, Admr., 12 C.C. 46.**

Thus far we have been considering the status of the claim prior to the appointment of Marjorie Mannix Chapman as administrator de bonis non with the will annexed, she having accepted the appointment and qualified on August 11, 1933. So far as is disclosed from the agreed statement of facts no written communication was passed between the receiver and the executors after the presentation of claim on April 22, 1933. On two different occasions the receiver discussed with the attorney for the executors the matter of the claim arising under the stock assessment, and made inquiry as to when said claim would be paid. In each conversation the attorney furnished the information that the estate was in process of liquidation and that the assessment would be taken care of in due course. The attorney also advised against reducing the claim to judgment since nothing would be gained thereby.

On August 10, 1933 the receiver addressed a communication to all shareholders in default of payment, including the estate of George W. Mannix. This was a short letter of two paragraphs. The first paragraph requested information by return mail as to what arrangements had been made to take care of the stock assessment. The second paragraph advised that the receiver had been instructed by the Comptroller of the Currency to reduce the assessments to judgment unless proper arrangements were made for liquidation of same. This communication came into the hands of Marjorie Mannix Chapman and on August 12, 1933 she addressed the following communication to Mr. Reese, receiver:

"On August 11, I received my letters testamentary from the Probate Court of Darke County, Ohio, for administration of the above estate. Answering your letter of August 10 regarding the assessment due from the estate, will you please mail me at once the amount of said assessment, and I will attend to the matter at once? Very truly yours, Marjorie Mannix Chapman, Admrx. de bonis non with the will annexed of the estate of George W. Mannix, Jr., deceased."

This communication must be construed as a recognition of the validity of the claim. Certainly by no process of reasoning could it be construed as a rejection.

On August 15, 1933, the receiver replied, advising that the amount of the stock assessment against the estate of George W. Mannix, Jr., was $1300.00 plus interest at the rate of 6% from May 19, 1933. The last paragraph of the letter requested the remittance to be made to the address indicated below, which was Box 341, Wilmington, Ohio. Again, on May 22, 1934, the receiver addressed a letter to Mrs. Chapman, Greenville, Ohio, requesting information as to when settlement may be expected in the stock assessment. Receiving no reply to this communication, the receiver again, on June 14, 1934, addressed Mrs. Chapman, at Greenville, Ohio, requesting immediate reply to his letter of May 22 relative to the stock assessment. On June 25, 1934, the receiver addressed a letter to Mr. John D. Andrews, 811 Rentschler Building, Hamilton, Ohio, acknowledging receipt of letter from Mr. Andrews under date of June 19, inquiring as to the stock assessment levied against the estate of George W. Mannix, deceased. In compliance with the request copy of original notice which had been sent by registered mail to each stockholder, was enclosed by the receiver in his answer to Mr. Andrews. On June 27, 1934, the receiver again addressed Mr. Andrews, attorney, calling attention to letter of June 14, 1934, to Mrs. Chapman, administratrix, and the reply of Mr. Andrews under date of June 19. He also called attention to Mrs. Chapman's letter under date of August 12, 1933, wherein she advised the receiver that if he would give her the amount of the stock assessment she would take care of the matter at once. The third paragraph of the letter is as follows:

"I would appreciate your informing me by return mail as to whether you are recommending the assessment in question be acknowledged as a just claim against the estate and, if so, the approximate time it will take to make settlement of same."

The further and last paragraph of the letter is in no sense helpful to the questions here involved.

On August 6, 1934, the receiver addressed his attorney, Mr. Wilbur D. Spidel, in Greenville, Ohio, advising as to the substance of letter addressed to Mr. John D.

648

Andrews, attorney, and the further fact that no reply had been received. The letter requested Mr. Spidel to commence action, which was done on August 9. Copy of this letter was mailed to Mr. Andrews.

If the assessment claimed as a binding obligation against the estate was rejected at all, it would have to be based on the receiver's communication to Mr. John D. Andrews, under date of July 17, 1934, which was unanswered by either Mr. Andrews or the administratrix. If not a rejection, and there certainly was none previously, then the administratrix might properly have defended upon that ground, as was done in the case of Smock v Bous, Admrx., 12 C.C. 46. If the failure to answer the communication could be construed under §10509-113 GC as a rejection, then the action was brought timely and would not be defeated by §10509-144 GC.

The case of Cheesman, Admr. v Kyle, 15 Oh St 15, holds that informal presentation and failure to allow claim is a sufficient rejection to warrant suit. Wilder, Judge, on page 20 of the opinion, comments on this question at length.

It should require no citation of authorities to support the proposition of law that the claimant is not authorized to bring an action against the administrator of an estate except where the claim ▮▮▮▮▮▮ on being presented for allowance is rejected or disallowed. Where the validity of the claim is acknowledged, no action will lie upon it. The courts of this state have directly or inferentially so held in numerous cases. (This rule has its exception where action is brought on allowed claim but in such instance claimant must bring himself within the statute).

Taylor et v Thorn, Admr., 29 Oh St 569; see 573 of opinion;
Stambaugh ex v Smith, 23 Oh St 584;
Keenan v Saxton, Admr., 13 Ohio 41.

The presentation and allowance of the claim tolls the statute of limitations or non-claim, and on a subsequent ▮▮▮▮▮▮ rejection, either by the first administrator or a subsequent one, or upon requisition, will only start to run at the time of such rejection.

Spidel, Admr. v Phillips et, 78 Oh St 194;
Stewart, Admr. v McLaughlin, Admr., 47 Oh St 555;
Bray v Darby, Admr., 82 Oh St 47.

The presentation and rejection of a claim being a requisite condition precedent to the bringing of an action against ▮▮▮▮▮▮ an administrator of an estate, it necessarily follows that the petition should contain such allegation.

Sec 10509-138 GC would authorize claimant to bring action under certain conditions, even when claim has been allowed, but if brought under the authority of this section plaintiff would have to bring himself within the provision of the section through requisite allegations in his petition. This was not done in the instant case, and therefore §10509-138 GC would not be applicable. This section is kindred to old §6108 of Revised Statutes and §10740 GC.

The case of Thomas v Chamberlain, 39 Oh St 112, was an action after allowance of claim and therein the petition set out the requisite and necessary allegation, as provided under §6108, Revised Statutes. McIlvane, Judge, in rendering the opinion, on page 118, says that the only question raised under the demurrer and argument by the defendant was that the petition having alleged that the claim sued on having been duly allowed by the administrator of the estate, it thereby denied a cause of action. The court held that the action was properly brought, in view of the requisite allegations so as to invoke §6108, Revised Statutes.

The action in the instant case not having been brought as an allowed claim and there being no allegations of presentation and rejection of claim, the query arises whether a cause of action is stated.

Looking further to the pleadings, we find that the defendant did not raise this issue either by demurrer or answer. It has been uniformly determined in this state that the failure to raise the question either by demurrer or answer waives it. Thereafter the issue is submitted exclusively upon the merits, with all questions that might be raised under the non-claim statute eliminated. The leading case in Ohio is Pepper v Sidwell, Administrator, 36 Oh St 454. The syllabus reads as follows:

"In an action against an administrator, the objection that the claim sued on was not presented for allowance before the action was brought, is waived, where the administrator joins issue and goes to trial on the validity of claim without objection."

On page 556, in the opinion of the court, we find the following recital as to the state of the pleadings:

"The petition contained no averment that the note or claim sued on had been exhibited to the administrator, and had been disputed or rejected by him; nor that the

period of eighteen months, or the further time allowed by the court, if any, to collect the assets of the estate, had elapsed, before the commencement of the action; nor was there any averment either that the estate had been represented to be insolvent, and that the action was brought to settle the validity of a contested claim, or that the claim was one that would not be affected by the insolvency of the estate, if such insolvency in fact existed. But the defendant neither demurred to the petition, nor did he take any objection by answer that the claim had not been presented for allowance. On the contrary, he set up a defense to the merits of the claim, and went to trial on the issue joined thereto."

Continuing further, the judge makes the following observation:

"In view of these facts, we think he should be held to have waived the right to rely on the failure of the plaintiff to show a presentation and rejection of the claim, as a defense to the action."

Other Ohio cases making like holdings are the following:

Daykin, Admr. v Emery et, 10 C.C. 652; Barnam ex v Feid, 27 N.P. (N.S.) 409.

The answer in the instant case was formulated as a first defense and a second defense.

The first defense admitted the appointment and qualification of Albert D. Reese, as receiver of the First National Bank of Pitsburg, and that he is still serving in that capacity; that he was appointed receiver of said bank by the order of the Comptroller of the Currency of the United States of America. Also admits that Marjorie Mannix Chapman is the administratrix de bonis non with the will annexed of the estate of George W. Mannix, Jr., deceased, and that she was preceded in said trust by Joseph Menke and John H. Mannix, as the surviving executors of the last will and testament of George W. Mannix, Jr., deceased. After these admissions, denies all other allegations of the petition.

The second defense admits, although by way of averment, that the Comptroller of the Currency on the 12th day of April, 1933, made an order and finding that the assets in the hands of the receiver of the First National Bank of Pitsburg were insufficient to pay the debts of said bank; that it was necessary to enforce the individual liability of the stockholders, and it was further ordered that an assessment be

made upon the shareholders of the First National Bank and that the assessment be paid on or before the 19th day of May, 1933.

Further avers that her said decedent, George W. Mannix, Jr., deceased, died testate on the 19th day of March, 1930; thereafter on the 24th day of March, 1930, Conrad Kipp, Joseph Menke and John H. Mannix were appointed and qualified by the Probate Court of Darke County, Ohio, as executors of the will of said decedent. Further avers that on the 11th day of August, 1933, after the resignation of Joseph Menke and John H. Mannix on the 13th day of July, 1933, and after giving bond as required by law, she was appointed by the Probate Court of Darke County, Ohio, as administratrix de bonis non with the will annexed, and that she was serving in that capacity at the time of the commencement of this action on the 9th day of August, 1934, and that she is still serving in that capacity. Then follows the prayer that the petition be dismissed.

It will be noted that the answer denies all allegations of the petition alleging that George W. Mannix, Jr., was a stockholder in the First National Bank of Pitsburg at the time of his decease, and also the further allegations relative to the presentation of claim to the administratrix and her predecessors.

Under the state of the pleadings the only question raised through the general denial was on the merits. Of course, the agreed statement of facts removes this issue.

Further summarizing our conclusions from the pleadings and the agreed statement of facts, we set forth the following:

March 17, 1930, George W. Mannix, Jr., died testate and at the time of his death was the owner of thirteen shares of stock in the First National Bank of Pitsburg, Ohio, of the par value of $1300.00. At the time of his death the bank was a going concern and the double liability on the stock did not attach until the assessment was made by the Comptroller of the Currency almost three years later.

March 24, 1930, John H. Mannix, Conrad Kipp and Joseph Menke, being the nominated executors of the George W. Mannix estate, gave bond and were duly qualified as such executors. Within a year or two Conrad Kipp died and the remaining two continued to function as such executors.

April 12, 1933, the Comptroller of the Currency made an order levying a stock assessment of 100% against all the stock of the First National Bank of Pitsburg, Ohio.

April 22, 1933, the executors under the will received from Albert D. Reese, as receiver, a notice making demand for payment of Mannix's portion of such assessment, the same to be paid on or before May 19, 1933, or, in the alternative, in four equal payments, the last to be made on or before August 19, 1933.

As a matter of law our conclusion is that the estate of George W. Mannix, not having been closed, the claim █ was presented timely and was not barred by the provisions of §10509-112, GC, §5152, U. S. Revised Statutes, as construed by the Federal Courts, is an aid to this conclusion, if such be necessary, which is very doubtful.

Following the presentation of the claim, Mr. Reese, the receiver, contacted the attorney for the executors, and through these conversations there was an informal allowance of the claim as a valid obligation against the estate. The agreed statement of facts admits that Mr. Billingsley was attorney for the executors, and there being no qualification or limitation as to his authority in the agreed statement of facts, we determine that his action in recognizing the claim as a valid obliga- █ tion would bind the estate at least until such time as the claim might be rejected either by the then existing executors or their successors.

The claim having been duly presented and accepted would toll the █ running of the non-claim or limitation statutes until such time as the claim was rejected, if it ever was rejected.

The present appellee, Marjorie Mannix Chapman, was appointed administratrix de bonis non with the will annexed of the estate of George W. Mannix, Jr., deceased, on August 11, 1933. On August 12, 1933, she answered a letter received from the receiver dated August 10, which letter would also constitute an informal acceptance of the claim. In this letter of August 12, the administratrix de bonis non requested that the receiver inform her as to the amount of the claim. This letter, on August 15, 1933, was very promptly answered and the amount given. Nothing further was done until May 22, 1934, when the receiver again wrote the administratrix but received no response. Another letter was written on June 14, and this letter was replied to on June 19 by Mr. Andrews, attorney for Mrs. Chapman. Again, on July 17, the receiver wrote to Mr. Andrews, among other things requesting that he acknowledge the assessment as a just claim against the estate. This letter was not replied to.

It is not necessary to determine whether or not this failure to acknowledge the assessment as a just claim in the light of the subsequent pleadings would constitute an informal rejection of the claim, authorizing action to be brought as a rejected claim. If so the petition was filed August 9, 1934, which would be well within the two months prescribed for bringing action after rejection of claim. §10509-133 GC.

The fact that the petition failed to state the usual allegations of presentation and rejection was waived by the █ defendant going to trial on the merits without raising the question, either by demurrer or answer. Had the defendant raised the question by demurrer or answer, the plaintiff under the agreed statement of facts could have amended and thereby directly have raised the question. This situation was probably known to counsel for the defendant, and hence the question was not raised by demurrer or answer, possibly concluding that they would prefer to defend a pleading with some questionable infirmities than to inform plaintiff of such infirmities and thereby have them corrected. However, under the law as it stands these apparent infirmities are waived and the non-claim statutes or statutes of limitation can not be given application.

Under the state of the pleadings and in the light of the agreed statement of facts, it is our conclusion that the plaintiff is entitled to recover the full █ amount of the claim, plus interest and costs. It therefore follows that the judgment of the trial court will be reversed. The controlling facts, being admitted, the issue thereby is presented wholly as a question of law. Judgment may be entered for the plaintiff for the sum of $1300, plus interest as prayed for in the petition, plus costs.

Exceptions will be allowed to the appellee.

HORNBECK and BODEY, JJ, concur.