## BURKHARDT v BURKHARDT et

Ohio Probate Court, Montgomery Co

Decided Oct 14, 1938

442

James A. Burkhardt, Dayton, for plaintiff.

John H. Shively, Dayton, for The Home Owners Loan Corporation.

George E. Nicholas, Dayton, for The Miami Savings & Loan Co.

Estabrook, Finn & McKee, Dayton, for The Good Samaritan Hospital Association, Inc.

## OPINION

By WISEMAN, J.

This is an action for declaratory judgment, filed by Louise M. Burkhardt as executrix of the estate of Richard V. Burkhardt, deceased, against the Home Owners Loan Corporation, the Miami Savings & Loan Company, the Good Samaritan Hospital Association, and others.

The decedent died September 4, 1935; the will was duly admitted to probate on September 18, 1935, and on the same day the plaintiff was appointed executrix. On February 26, 1936, said estate was declared insolvent by this court.

Both the Miami Savings & Loan Company and the Home Owners Loan Corporation held notes against the estate of said decedent which were secured by mortgage on the decedent's real estate. On October 11, 1935, the Miami Savings & Loan Company filed a suit in foreclosure on which judgment was taken on February 29, 1936. After a sale was had a deficiency judgment was taken in the sum of $7,121.39 on January 23, 1937. On April 24, 1936, the Home Owners Loan Corporation filed a suit in foreclosure on which judgment was taken on January 9, 1937. After a sale was had a deficiency judgment was taken in the sum of $1441.76 on April 22, 1937.

After the payment of all preferred claims there still remains in the possession of the executrix the sum of $879.50 to distribute to general creditors. The executrix has allowed general claims which aggregate over $11,000.00. The judgment creditors contend for an equal ratable distribution with other general creditors. The court is asked to determine their rights in the matter.

The court can easily dispose of the claim of the Good Samaritan Hospital Association. This claim was neither presented within four months after the appointment of the executrix as required by §10509-112 GC, nor reinstated under §10509-134 GC. It was not listed in the schedule of claims. The court therefore finds that such creditor cannot participate in the distribution of the fund to general creditors, although the executrix did know that the claim existed. Unless the claim is presented within four months after the appointment of the executrix or reinstated as provided by law, it is barred. **Beach v Mizner, 131 Oh St 481, 6 O.O. 155.**

The record shows that the Miami Savings & Loan Company and the Home Owners Loan Corporation have neither presented their claims against the estate before the expiration of the four-month period as required by §10509-112, GC, nor sought to have their claims reinstated under §10509-134, GC.

On February 26, 1936, the executrix filed in this court a schedule of claims as required by §10509-118, GC. In the schedule the executrix lists the claims of the two judgment creditors as follows:

"Home Owners Loan Corporation with interest to February 11, $8,589.38". Note and mortgage.

"Miami Savings & Loan Company interest to February 24, $8374.59". Note.

In filing the schedule of claims the executrix used a printed form and in the column headed "allowed or rejected" the first claim listed was marked "allowed," and ditto marks are found opposite all other claims including the two in question. The record shows that the two claimants in question made no effort whatever to present their claims, and took no action in regard to the same with the exception of taking a deficiency judgment. Furthermore, the record shows that the executrix had no contact with the claimants relative to listing their claims in the schedule. The schedule of claims was prepared by the attorney for the executrix and filed by him in Probate Court. At the time the schedule of claims was presented for filing in the Probate Court, there was no indication on the schedule as to whether any of the claims had been allowed or rejected. A deputy in the Probate Court required the attorney to indicate whether the claims had been allowed or rejected, whereupon said attorney, without the consent or knowledge of said executrix and of his own ac-

cord, wrote opposite the name and amount of the first creditor listed the word "allowed" and placed ditto marks opposite the names and amounts of all other creditors whose claims were listed.

The contention is made by the Miami Savings & Loan Company and the Home Owners Loan Corporation that they were not required to present their claims, or if presentation were required, the executrix waived the presentation by listing their claims in the schedule of claims.

Under proper instructions, counsel for the fiduciary may waive the formal presentation of a claim, and reject or allow the claim on behalf of the fiduciary. It is held that the principle of law that the fiduciary cannot delegate his authority is not violated, inasmuch as the act of counsel under instructions is the act of the fiduciary. Miller v Ewing, Admr., 68 Oh St 176, 184. However, in the case at bar the executrix gave no instructions to her counsel. The act of the counsel in placing ditto marks on the schedule of claims indicating that claims listed in the schedule were allowed, in compliance with the request of the deputy in the Probate Court at the time the schedule was filed, was done wholly without any knowledge or consent of the executrix. In such case the act of her counsel was without authority and of no legal effect. Therefore, the court is required to approach the situation as if the claims were listed on the schedule with no indication as to whether they were allowed or rejected.

What then was the legal effect, if any, of listing the claims on the schedule of claims? §10509-118, GC requires the executor or administrator to list all claims, "including any which may be known to the executor or administrator but not presented." It was the duty of the executrix in this case to comply with the provisions of this statute. In performing her duty by listing the claims which were known to exist but which were never presented, did she waive a formal presentation? We do not think so. §10509-118 GC was enacted to achieve at least two purposes; first, to require the executor or administrator to list all claims duly presented and to indicate whether the claims were allowed or rejected, in order that disputed claims may be adjudicated seasonably under §10509-119 GC; and second, to list all claims known to exist although not presented, for informational purposes only, in order that all persons interested in the division of the estate may be better able to know and protect their rights. It is contended that under §10509-118 GC which provides that the executor or administrator shall in the schedule "state the name and address of each claimant, the amount claimed, whether allowed or rejected, whether secured by mortgage or otherwise, and the date of maturity if not yet due," the executor or administrator is required to pass upon all claims known to exist even though not presented, and to state on the schedule whether such known claims were allowed or rejected. The words of the statute are broad enough to cover all claimants, but with respect to the duty of the executor or administrator to allow or reject a claim, it certainly was not the intention of the Legislature to embrace within the term "claimant" as used in the last sentence, claimants whose claims were not presented. In considering all the sections of the statute relative to the presentation, rejection, authentication and reinstatement of claims (§§10509-112, 113, 114; 10509-134 GC) it will be observed that the creditor carries the burden to act in duly presenting his claim for allowance. The executor or administrator is not required to act in regard to any claim until and unless presentation is made. If §10509-118 GC were construed so as to require the executor or administrator to allow or reject claims known to exist but not presented, it would throw the burden on the executor or administrator to search out the claimant and ascertain whether said cliam was just or unjust. Most certainly it was not the intention of the Legislature to reverse the order of things, depending on whether the claim was or was not presented. Therefore, the court concludes that with respect to the duty of the executor or administrator to allow or reject a claim, the word "claimant" as used in §10509-118 GC refers only to a claimant whose claim was presented. The executor or administrator has performed his whole duty under the law relative to known claims which are not presented, by listing them in the schedule, and is not required to pass on their allowance or rejection.

The listing of a claim known to exist but not presented, in a schedule of claims, and filing the same in the Probate Court after the expiration of the four-month period within which to present claims, does

not operate to raise the status of such claim above that of a barred claim. Knowledge on the part of an executor or administrator of the existence of a claim against the estate does not avoid the necessity of its due presentation. If the claim has not been presented within the four-month period, such claimant must pursue his remedy under §10509-134, GC, to have his claim reinstated. Therefore, the claimants in the case at bar can not rest their right to participate in the distribution of the fund on the theory that their claims have the same status as claims which had been presented within four months, on the ground that their claims were listed in the schedule. They must rest their right to participate in the distribution of the fund on some other legal ground.

In the case at bar, the two claimants which have secured deficiency judgments, brought suits in foreclosure in the Common Pleas Court. Each claimant sued on the obligation evidenced by a promissory note as well as to foreclose the mortgage lien. The suit on the note was an ordinary civil action for money in personam and legal in character. The foreclosure of the lien was an action in rem and equitable in character. In the case of Moore v Starks, 1 Oh St 369 the court on page 374 say:

"It has been suggested that a bill filed to foreclose mortgaged premises is a proceeding in rem, and that therefore the court obtained jurisdiction without bringing the defendants into court. A proceeding to foreclose mortgaged premises is a proceeding, in one sense, both in personam and in rem. It is a proceeding in personam, because it seeks to charge a defendant with a debt. * * * It is a proceeding in rem so far that it is necessary that the property sought to be especially appropriated should be within the jurisdiction of the court. In this sense it is a proceeding both in personam and in rem, and requires that the court should have jurisdiction both of the person and of the thing."

See also: Maholm v Marshall, 29 Oh St 611; Fleming v Kerkendall, 31 Oh St 568; 27 Ohio Jur. page 594.

It is not incumbent on a lien holder to first present a claim to the executor or administrator before foreclosing the lien. Ambrose, Admr. v Byrne, Exr., 61 Oh St 146. See also Hathaway v Lewis, Admr., 13 O. Dec. Rep. 160. A statement on the general law is given in the American Law on Administration, by Woerner, Third Edition, Vol.

2, §409, as follows:

"Actions to foreclose mortgages, or to enforce other collateral securities or liens, are distinct from the allowance of the debts so secured; and since, generally, Probate Courts have no jurisdiction of such actions, the limitations and conditions imposed on the parties enforcing the payment of simple debts against executors and administrators are not applicable. Thus mortgages or vendors' liens may generally be foreclosed without having proved the debt in the Probate Court, or making the affidavit of claimants presenting demands against administrators, or proceeding within the time required for the presentation of claims against estates of deceased persons; nor, on the other hand, does the probate of the claim affect the holder's right of foreclosure.

"For the same reason, the right to foreclose gives the holder no remedy against the general assets of the estate, and does not give such a claim a preference thereto, and his claim in this respect for any deficiency is barred like any other claim, unless he presents the same in proper time * * *".

The primary indebtedness existing between the judgment creditors and the decedent's estate is represented by promissory notes. The holders of the notes should have presented their claims within four months after the appointment of the executrix as required by §10509-112, GC. Even though the law does not require a secured creditor first to present his claim before bringing an action to foreclose his lien, the law does require him to present his claim evidenced by a promissory note, if he intends to pursue his legal remedy to the point of securing a personal judgment for the deficiency. This was not done; but a civil action was brought by the Miami Savings & Loan Company within the four-month period, and by the Home Owners Loan Corporation after the four-month period expired. In filing a civil action on the note, it was incumbent on the plaintiff to allege and prove the presentation and rejection of the claim. The fact that in the civil action a second cause of action for foreclosure was instituted, did not obviate the necessity in the first cause of action on the note to state the required allegations as to presentation and rejection of the claim. A cause of action which fails to state this allegation is demurrable. The authorities in support of this legal proposition are numerous. Beach v Mizner, 131 Oh St 481, 6 O.O. 155; State ex Fulton v

Coburn, 133 Oh St 192, 10 O.O. 249; Woerner on Administration, Vol. 2, §409. In the case at bar the required allegation was not made, but the executrix failed to interpose an objection. It has been held that such failure on the part of the executor or administrator to object, operates as a waiver of presentment. In the case of **Pepper v Cidwell, 36 Oh St 454,** syllabus reads as follows:

"In an action against an administrator, the objection that the claim sued on was not presented for allowance before the action was brought, is waived, where the administrator joins issue and goes to trial on the validity of the claim without objection."

On page 457 the court say:

"The provision of the statute exempting the administrator from liability to be sued until preliminary steps are taken, or a certain period of time has elapsed, is a privilege that may be waived. The object of the statute is to afford the administrator an opportunity to allow all valid claims against the estate, and thereby avoid litigation and expense."

Again on page 458 the court say:

"In our judgment, where the petition fails to show the disallowance of the claim, or that the time allowed for the collection of the assets of the estate elapsed before the commencement of the action, and the defendant takes no objection either by demurrer or answer, but goes to trial upon issues in which he contests the validity of the claim, it is too late to insist on the non-presentation of the claim, or the premature bringing of the action, as a defense to the plaintiff's right to recover."

In the case of **Devereaux v Hutchinson, Admr., 16 C.C. (N.S.) 447,** the syllabus reads as follows:

"Where a petition against an administrator does not show that the claim was presented and disallowed, or that the necessary time has preceded the commencement of the action, and the administrator makes no objection either by demurrer or answer, but goes to trial upon an answer denying the validity of the claim, it is too late after several trials have been had and costs incurred, for him to raise that issue by demurring to an amended petition."

In the case of **Barman, Exrx. v Feid, 27 N.P. (N.S.) 409,** the first part of the syllabus reads as follows:

"The requirement that a claim against the estate of a deceased person be pre-sented to the administrator of the estate and be rejected by him before suit can be brought on it against the administrator is not jurisdictional and may be waived by the administrator in answering the suit and going to trial on the merits of the case."

This proposition of law is supported also in the following cases: **Musser v Chase, 29 Oh St 577, 586; Daykin v Emery, 10 C. C. 652; Hampton v Replogle, 47 Oh Ap 394; Reese v Chapman, 23 Abs 641, 648.**

In the case at bar the record shows that the executrix appeared in the civil actions filed in the Common Pleas Court and no objection was interposed in either action raising the question as to the right of the plaintiff to bring the action until after a presentment and rejection of the claim. Under the law, failure of the executrix to object in the civil action in the Common Pleas Court, operated as a waiver of presentment. It will be observed that the civil action was brought by the Miami Savings & Loan Company before the expiration of the four-month period within which claims should have been presented, and that the Home Owners Loan Corporation instituted its action after the four-month period expired and at a time when its claim was barred. This court is of the opinion that from the state of the record the presentment of the claims has been waived in both instances. Whether the claimant institutes the civil action before or after the period has expired within which claims should be filed, the failure on the part of the executrix to interpose an objection operates as a waiver of presentment.

In the cases cited the court laid down a legal proposition to the effect that even though the suit had been instituted prematurely, that is, at a time prior to the expiration of the period during which, under the statute, the executor or administrator could not be held to answer to a civil action, the failure on the part of the executor or administrator to interpose an objection by way of demurrer or answer operated as a waiver of the required allegation and proof. In the case at bar, the two civil actions instituted by the two judgment creditors were brought prior to the expiration of nine months following the appointment of the executrix, during which time the executrix was not required to answer to the suit of a creditor by reason of the provisions of §10509-138, GC.

In this section, however, several exceptions are made, one of which being that a

creditor is not required to forego bringing an action for nine months "for the enforcement of a lien against or involving title to specific property." Insofar as the judgment creditors in the case at bar sought to foreclose a lien, §10509-138, GC would not forbid bringing such an action. The provisions of this section, however, would prevent the bringing of a civil action on a promissory note within nine months. The cases hold that the requirement of the statute that nine months shall elapse before the action can be brought may also be waived by failure on the part of the executor or administrator to object either by demurrer or answer in the civil action. In the case at bar, the executrix failed to interpose an objection to the bringing of the action before the expiration of nine months after her appointment, and by her failure to object she waived the requirement of §10509-138 GC. The matters at issue were all adjudicated in a court of competent jurisdiction. Nothing could be gained by requiring the claims to be presented at this time. The law does not require the doing of an idle or useless thing.

The question now arises as to the basis on which the two judgment creditors participate in the distribution of the fund. The estate being insolvent, shall they receive a dividend based upon the full amount of their original claims before a reduction is made by reason of a partial satisfaction as a result of the sale of the land, or, shall the dividend be computed on the balance of the claim after credit is given for the amount realized from the sale of the land? In the case of Jelke v Stallo, Assignee, 1 O.N.P. page 29 (1894) the court in its opinion holds:

"I think the decided weight of authority is that the holder of a note may prove his claim for the whole amount due on it at the time the claim is proved against the estate of the maker, and the fact that the holder may have collaterals or other securities, which he has subjected to the payment of the same, after such proof, does not affect his rights to receive a dividend against the estate of the maker upon the full amount of his original claim, provided only that he shall not receive in such dividend more than sufficient to satisfy the balance of his claim." (Cases cited).

In the case of Cromwell v Herron, 11 C. C. 448 (1896) the first part of the syllabus is as follows:

"A creditor of an insolvent estate who has a mortgage or other security for part of his claim, is entitled to a dividend on the full amount thereof, including the amount which he may realize from such security, if together they do not equal the amount of his claim."

On page 451 the court say:

"When the question was first presented to us, I believe all the members of the court were of the opinion that the latter was the true and equitable rule, and in the absence of any decision by the Supreme Court of this state, we felt disposed to so hold, and Judge Cox is still of the same opinion. A more careful consideration of the many authorities cited to us has led Judge Swing and myself to the conclusion that the great weight of authority is to the contrary. So far as I am concerned I come to this conclusion with reluctance, for I feel that it is not the most equitable rule."

The decisions in Ohio are not at all in unison on this proposition of law. The court in the case of Spence, Assignor v Kiefer, 4 O.N.P. 439, which was decided by Judge Rockel, held:

"A preferred creditor cannot participate in a dividend among general creditors until the security of his claim has been exhausted. All such creditor is entitled to is that the assignee retain sufficient assets to enable him to share pro rata with the general creditors on the amount of his claim remaining unpaid after the proceeds of his security has been applied thereon."

The court in its opinion on page 439 say:

"The better doctrine, however, and the one which I believe prevails in Ohio is, that the claimant is only entitled to a dividend with general creditors on the amount of his claim which remains unpaid after all his securities have been exhausted and applied on his debt."

In the same assignment case Judge Rockel in 7 O.N.P. 624, applied this proposition of law in the distribution of the fund in that case, ruling again that preferred creditors may only participate in the general fund for distribution on the basis of the amount of their claim remaining after their securities have been exhausted.

We come now to the consideration of the case of State National Bank v Esterly, 69 Oh St 24, in which the Supreme Court reviews this whole question relative to its application to assignment cases, and applies what it conceives to be the most equitable rule to follow in the case involving a receivership. The court wishes to quote at

length from the opinion, in order to present the underlying reason for the rule announced by the Supreme Court. The court on page 34 say:

"Numerous text-writers have been drawn upon by each side of the controversy, and we are constrained to agree with counsel, that the authorities are about equally divided, both as to numbers and their apparent weight. Their reconciliation is impossible, and a careful review of them here would be fruitless labor."

On page 35:
"But to allow a dividend to the secured creditor on the basis of his entire claim unreduced by collected collaterals would diminish the share of the general or unsecured creditor in the estate of the insolvent debtor. In other words to pay a dividend on more than is actually due on a secured claim will unjustly reduce the general fund in which the unsecured creditor is entitled to share."

The court then discusses the manner in which claims are presented in assignment cases, and the interest which creditors have in the property of the assignor. The court on page 38 say:

"And we think that this information as to the condition of the claims is to be furnished so that a dividend may be made on equitable principles, because whatever amount a secured creditor receives beyond what is actually due him after application of money realized from collaterals, or after allowance of admitted off-sets, must be taken from the general fund and therefore from the general creditor. Therefore it seems to us that, we should hold and answer the third inquiry of counsel, by saying that the dividend should be computed 'upon the balance unpaid at the time of the settlement'."

The case before the Supreme Court was one in which a receiver was appointed. The court reviewed the law relative to the question as it arose in assignment cases, and held that there was a distinction between assignment cases and receivership cases in that in assignment cases the creditor had an interest in the property assigned, whereas in receivership cases the title to the property still remained in the debtor until the property was sold by the receiver under the direction of the court. In commenting on this distinction between assignment

and receivership cases, the court on page 39 say:

"Creditors who had no lien or title prior to the appointment of a receiver, gained neither in any sense or degree, through the receivership. Hence it is that property in the hands of a receiver is considered as in the court and under its control, to be administered so as best to subserve the ends of equity; and when the debtor's estate becomes assets in his hands, the general creditors acquire rights which the court will protect by placing all the creditors on an equality as far as possible. This is the rule stated in Bank v Bank, 3 N. J. Eq., 266, and many other cases.

"Further the argument of an equitable ownership by the creditor in assigned property can have no application whatever here. But if we are right in our views as to the rights of creditors in assigned property, it seems quite clear that the same rule should be enforced in settlements of estates placed in the hands of a receiver."

The court then discusses the law which would require the creditor to apply the collaterals as payment pro tanto on his claim. On page 40 the court say:

"When this is done, and not until then, do the secured and unsecured creditors stand on an equal footing. When that is done, the secured creditor has received the benefit of his security and is ready to claim a share in the general estate with the general creditors. Otherwise, as before stated, the secured creditor would hold the avails of his securities actually reducing his demand, and would also take from the general estate a portion which belongs to the unsecured creditors.

"This latter would be inequitable, while the former rule would do even and exact justice between all parties.

"To elaborate this doctrine, or quote from cases in which it is found, is not necessary. We think the principle is right and approve it as has been done in a long line of cases, and by the best of modern text-writers."

The rule laid down by the Supreme Court in Bank v Esterly was followed in the cases of Engraving Company v Ragland, 30 N.P. (N.S.) 101, 114, and In Re Peoples Commercial Bank, 30 N.P. (N.S.) 190, 194.

This court is of the opinion that the interest which a creditor holds in the property of a deceased debtor is the same as that which the creditor holds in the property of the debtor in a receivership case.

In the one instance the title to the property resides in the debtor and in the other instance in the debtor's heirs or devisees until sold under the instructions of the court and applied to the payment of the creditor's claim. This court is of the opinion that the Supreme Court in the case of Bank v Esterly held to the most equitable doctrine, which is approved by modern authorities. Reasoning by analogy, we are of the opinion that this same equitable doctrine should be applied in the settlement of the estates of deceased persons. In the case at bar, to the extent that the deficiency judgment creditors held security, they stood in the position of secured creditors and it would be inequitable to permit them to participate in the distribution of the general fund with respect to that portion of their claim; to the extent that their claims were not secured they stood in the position of the general fund on that basis. be permitted to participate in the distribution of the general funds on that basis. We conclude, therefore, that two judgment creditors should participate  in the fund on the basis of their claims which remain unpaid after credit is given for the amount realized from the sale of the property in the foreclosure procecdings.